UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Duane Larson, Ronald Morris, Jr., Robert Cogger, and Thomas E. Fisher, Thomas J. Warnke, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs. MEMORANDUM ORDER

The Burlington Northern and Santa Fe Railway Company, a corporation,

Defendant. Civ. No. 01-527 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 14th day of March, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Defendant's Motion to Disqualify Plaintiffs' Attorneys. A Hearing on the Motion was conducted on February 28, 2002, at which time, the Plaintiffs appeared by Richard A. Lockridge, Russell A. Ingebritson ("Ingebritson"), Phillip G. Arnold, and Robert J. King, Jr., Esqs.; and the Defendant appeared by Steven J. Roeder, and Edward M. Glennon, Esqs. For reasons which follow, the Motion is

FILED MAR 14 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

denied, but without prejudice to its renewal upon a showing which warrants the extraordinary relief the Defendant requests.

## II. Factual Background

This action, which alleges that the Defendant defrauded a putative class of its present and former employees of their right to be fully compensated for noise-induced hearing-loss claims under the Federal Employers' Liability Act, Title 45 U.S.C. §§51-60 ("FELA"), was commenced in March of 2001. Well prior to the filing of this action, Plaintiffs' counsel transmitted to the Defendant a detailed notice of claim, and a courtesy copy of the Plaintiffs' Complaint. As averred by Ingebritson, without contravention[1] by the Defendant:

> 7. [I]n the fall of 1999, I provided [the Defendant] with oral, as well as extensive written notice of my good faith belief in the merits of this claim. All of the facts and allegations set forth in the Plaintiff's Amended Class Action Complaint, about which [the Defendant] now complains as "tainted,"

---

[1]At the time of the Hearing, during the course of the Plaintiff's argument, counsel for the Plaintiff made the same representation to the Court -- namely, that he had apprised the Defendant of his contact with McDonald -- and we inquired of counsel whether the representation found an evidentiary basis in the Record before us. Counsel responded in the affirmative, which evoked a denial, by counsel for the Defendant, that any such disclosure took place. Counsel's denial, however, is not supported by any sworn attestation. See, Stokes v. United States, 652 F.2d 1, 2 (7th Cir. 1981)("[T]he unsworn representations of counsel are not a substitute for evidence."), citing United States v. Underwood, 577 F.2d 157, 159 (1st Cir. 1978)(same).

> were fully known to and discussed with [the Defendant's] claims and legal officers in the fall of 1999 and in the months thereafter.
>
> 8. At no time, from the fall of 1999 until November 28, 2001 did [the Defendant] lodge any objection, or otherwise complain to me about my open and acknowledged contacts with Mr. McDonald.

Affidavit of Russell A. Ingebritson, dated February 20, 2002, at p. 3.

On March 26, 2001, the Plaintiff's original Complaint was filed in this Court and, pursuant to stipulated agreements between the parties, as adopted by Court Order, the Defendant was allowed through May 31, 2001, to serve and file its Answer or other responsive pleading. On May 31, 2001, the Defendant served notice that it would be filing a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, employing the procedure required by our Local Rules. See, D. Minn. LR7.1(b)(2).

Argument on that Motion was scheduled to be heard before the District Court, the Honorable Richard H. Kyle presiding, on August 28, 2001. See, Docket No. 19]. However, employing the leave granted by Rule 15(a), Federal Rules of Civil Procedure, when a defendant does not file an Answer in response to a Complaint, the Plaintiffs filed their Amended Class Action Complaint on August 16, 2001. See, Docket No. 21; see, West Professional Education Group, Inc. v. Harcourt Brace Legal and Professional Publications, Inc., 1995 WL 422651 at *13, n. 7 (D. Minn. 1995), citing 6 Wright, Mil-

ler & Kane, Federal Practice and Procedure: Civil 2nd §1483 at pp. 544-86 (1990), and cases cited therein.

As pertinent here, the Amended Complaint added the following allegations:

> 65. By late 1990, Defendant and its supervisory claims personnel decided that they must further reduce the monetary settlement values previously set forth in Exhibits 5, 6, and 7 [i.e., settlement value matrixes].
>
> 66. To this end, on approximately November 11 and 12, 1990, several of Defendant's senior claims representatives, together with senior in-house attorneys as well as outside legal counsel, met in St. Paul.
>
> 67. During the course of this meeting, Defendant created a secret floppy disk that contained a new set of settlement matrixes that had as their purpose the further substantial reduction of settlements paid to hearing loss victims. The new scheme was also intended to discourage unrepresented claimants from seeking independent legal counsel.
>
> 68. During the course of this meeting, Defendant materially and significantly furthered its misleading, deceitful and fraudulent hearing loss settlement scheme. Following the meeting, Defendant provided the floppy disk to all of its claims representatives throughout the United States for use by claims agents in persuading employees to accept the substantially reduced settlement values provided by the newest matrix. That secret matrix was referred to as a "Hearing Loss Calculation

> Worksheet." A copy of that "Hearing Loss Calculation Worksheet" is attached hereto as Exhibit 8.

Amended Complaint, at pp. 21-22.[2]

Due to the close proximity, between the filing of the Plaintiffs' Amended Complaint and the date of the Hearing on the Defendant's Motion to Dismiss, the District Court afforded the Defendant an opportunity to reframe its Motion to Dismiss, if the Defendant was intending to renew its Motion, and briefing was placed on a schedule so as to allow argument on any renewed Motion on November 2, 2001. See, Docket No. 30.

---

[2]In addition, the Defendant cites paragraphs 48 and 53, of the Plaintiffs' Amended Complaint, as central to its Motion to Disqualify. The Plaintiffs have quoted these paragraphs as follows:

> Upon information and belief, the first agreed upon hearing loss settlement matrix created by Defendant was in the form of a notebook in which a set of eighteen initial hearing loss cases were arranged in order of age and severity of hearing impairment, ranging from "minimal" to "profound." Each category set forth a pre-established narrow range of value that Defendant represented to be fair and reasonable compensation for each category of hearing loss. Defendant itself created these settlement matrixes and freely and voluntarily offered their universal application to those involved. * * * Upon information and belief, the existence and terms of the aforementioned notebook setting forth the agreed-upon settlement values have remained undisclosed and secret to this day.

Defendant's Memorandum, at p. 10.

According to the Defendant, the previously quoted portions of the Amended Complaint placed it on notice, for the first time, that the Plaintiffs had consulted with someone who had attended the meeting in St. Paul in 1990, which related to the use of matrices in the settlement of the Defendant's hearing-loss claims. The Defendant had little doubt that the "someone" was Glenn E. McDonald ("McDonald"), who is a former employee of the Defendant, who had held the position of Director of Claims, Lines West, until his employment with the Defendant was terminated, in April of 1992, for what the Defendant regarded as his poor performance. Following his employment with the Defendant, McDonald has been employed by various law firms in Seattle, Washington, which specialize in representing claimants in FELA cases, and he has been at the core of at least two prior attempts, by the Defendant, to disqualify opposing law firms on the basis of their assertedly improper contacts with McDonald. None of the attempts at disqualification has found success.

In 1994, the Defendant sought to disqualify the law firm, which then employed McDonald, from representing any claimant who was an employee of the Defendant, asserting that McDonald was sharing confidential information with the law firm, as to claims that he had considered while employed as the Defendant's Director of Claims. See, Sharon Graham v. Burlington Northern Railroad Co.,

Case No. C92-1936W (W.D. Wash.), attached to Affidavit of Glenn E. McDonald, dated February 20, 2002, as Exhibit 2. The District Court denied that Motion, concluding that the information, which had been sup-plied to the law firm by McDonald, was not privileged and, there-fore, there was no violation of the applicable Rules of Professional Conduct. Id.

The second attempt occurred earlier this year, in an amalgam of five separate actions, which were pending in three Federal Dis-tricts, which also relate to alleged improprieties in the Defen-dant's settlement of hearing-loss claims by means of an asserted matrix system, and which were ordered to be consolidated by the Judicial Panel on Multidistrict Litigation. See, In re Burlington Northern & Santa Fe Railway Co. Employee Settlement Agreements Lit-igation, 162 F.Supp.2d 699 (Jud.Pan.Mult.Lit. 2001). In those consolidated proceedings, the Defendant urged, as it does here, that the claimants' law firms had improper contacts with McDonald, during which legally privileged information was disclosed to the Defendant's disadvantage. In the consolidated action, the District Court orally denied the Motion, at the close of argument on that issue on February 8, 2002, but without prejudice to its renewal upon a proper showing.[3] Notably, the Defendant argued there, as it

[3]The Plaintiffs have submitted a non-certified copy of the (continued...)

does here, that the issues involved in that litigation parallel the issues here, and that plaintiff's counsel, in that case, jointly met, on occasion, with counsel for the Plaintiffs here, and that certain of those actions, which were later consolidated, were commenced on the same date that this action was filed.

The Defendant's Motion to disqualify McDonald, in this case, was filed on January 28, 2002 [Docket No. 43] -- approximately two weeks after the District Court denied certain aspects of the Defendant's Motion to Dismiss. See, Memorandum Opinion and Order, dated

---

[3](...continued)
transcript of the Hearing before the Multidistrict Court, which discloses the following rationale for the Court's denial of disqualification:

> THE COURT: * * * This is what we're going to do about the motion to disqualify. The motion to disqualify is denied. It's denied without prejudice to bring on a further action if there's material, but based upon what I've been presented with I can't see that it -- that the complaint itself discloses what I would consider privileged information under the circumstances. What we are going to do is I'm concerned that I have a witness out there that both sides want access to. That witness apparently is feeling some discomfort. Nobody's going to talk to Mr. McDonald except in the formal process of a deposition.

Exhibit 8 to Affidavit of Russell A. Ingebritson, at p. 25.

No written decision of the Court's ruling has been drawn by either party to this Court's attention.

January 10, 2002 [Docket No. 42].[4] The Plaintiffs oppose the Motion on several grounds. First, they contend that their counsels' contacts with McDonald did not violate the applicable Rules of Professional Conduct, as no legally privileged information was shared, by McDonald, with their counsel. They also pointedly maintain that the Defendant is guilty of laches, having been advised of their contacts with McDonald some two-plus years before the disqualification Motion was filed. Lastly, they argue that, if the Court were to find that McDonald improperly shared any privileged materials with their attorneys, then any such information would have been excluded from the protection of the attorney-client privilege because any such privileged communication would have been in furtherance of a crime or fraud.

For its part, the Defendant denies any delay in filing the Motion to Disqualify, and maintains that, given the filing of the Amended Complaint, and the rescheduling of its Motion to Dismiss, its attention was diverted to the summary disposition of the Plaintiffs' causes of action. Further, the Defendant denies any forewarning that the Plaintiffs' attorneys had contacted McDonald,

---

[4]The District Court dismissed, with prejudice, Counts Two, Four, Five, and Seven, of the Plaintiffs' Amended Complaint, and dismissed, with prejudice, a portion of Count Three, while denying a summary disposition of Counts One, Six, Eight, Nine, Ten, Eleven, and Twelve, as well as a portion of Count Three.

apart from the contacts that were impliedly raised by the newly incorporated allegations in the Plaintiffs' Amended Complaint, as we have previously quoted them. Accordingly, the Defendant contends that its counsel notified the Plaintiffs' counsel of the suspected improper contact, in a letter dated November 28, 2001, as expeditiously as circumstances would allow.[5]

## III. Discussion

a. Standard of Review. As we have previously detailed:

> Pursuant to Local Rule 83.6(d), the professional conduct of attorneys, who practice within this District, is governed by the Minnesota Rules of Professional Conduct. See, Bieter Co. v. Blomquist, 132 F.R.D. 220, 223 (D. Minn. 1990). Our Court of Appeals has instructed us "'to strictly enforce the Code of Professional Responsibility.'" Jenkins v. Missouri, [931 F.2d 470] at 486 [(8th Cir. 1991), cert. denied, 502 U.S. 967 (1991)], quoting Central Milk Producers Coop. v. Sentry Food Stores, Inc., 573 F.2d 988, 993 (8th Cir. 1978). In exercising this responsibility, the Court should consider "the ABA Code of Professional Responsibility, the court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceeding." United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982),

[5]We note that, in the consolidated action in the Western District of Washington, the Defendant first advised the claimants' attorney, that he should not talk to ex-employees of the Defendant, in a letter dated April 4, 2001, and that notice of the Defendant's intent to disqualify those attorneys was formalized in a letter dated November 27, 2001. See, Affidavit of Steve W. Berman, attached to Affidavit of Russell A. Ingebritson as Exhibit 9, at pp. 4-5.

> cert. denied, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). Ultimately, the party seeking the disqualification of opposing counsel bears the burden of showing that disqualification is warranted.

Olson v. Snap Products, Inc., 183 F.R.D. 539, 542 (D. Minn. 1998).

In Olson, we confronted circumstances that were not unlike those which presently face us, as counsel for the plaintiff, there, had contacted a former chief executive officer of the Defendant. After closing surveying the case law, we conclude that our analysis should be driven by a flexible approach. As we have previously explained:

> In our view, this latter, flexible approach stakes out a sensible and policy-oriented middle ground worthy of adherence. While matters of this sort may warrant "bright-line" rules, seldom do such categorical pronouncements survive variant factual applications. This pliant rule gives recognition to the underlying policy of Rules 4.3 and 4.4 of the Minnesota Rules of Professional Conduct, by prohibiting an attorney from unfairly taking advantage of unrepresented parties when acting on behalf of a client, while still allowing leeway for the proper search for the truth. Therefore, the pivotal question, in evaluating the propriety of [counsel for the plaintiff's] contacts with [the defendant's] former employees, is the likelihood that any information gathered by [plaintiff's counsel] actually intruded upon any legally privileged matters.

Olson v. Snap Products, Inc., supra at 545.

Our research, and the decisional law provided by the parties, has not provided us with any cogent basis to adopt either a more or less exacting standard of review. See, e.g., FleetBoston Robertson

Stephens, Inc. v. Innovex, Inc., 172 F.Supp.2d 1190, 1195 (D. Minn. 2001)(citing Olson with approval, and adopting "a flexible mode of analyzing Rule 4.2.").

B. Legal Analysis. The Defendant urges a more peremptory approach to the issue of attorney disqualification, by endorsing a disqualification if the former employee was exposed to attorney-client confidences in the course of his or her employment with the former employer.[6] We do not deny that, given an appropriate factual predicates, disqualification might be the result irrespective of the standard applied to the issue. See, e.g., MMR/Wallace Power & Industrial Inc. v. Thames Associates, 764 F.Supp. 712 (D. Conn. 1991); Williams v. Trans World Airlines, Inc., 588 F.Supp. 1037 (W.D. Mo. 1984); United States v. SAE Civil Construction, Inc., 1996 WL 148521 (D. Neb., January 29, 1996). Where we depart from the Defendant is in imposing any presumption that, because of the mere exposure to confidences by the former employee, the

[6]On the Record presented, we do not rest our decision on the notion of waiver, or laches. We deal here with the integrity of Court processes, and the need for public confidence in our system of justice. Whether the Defendant was diligent in raising the disqualification issue, certainly speaks to the seriousness of the claimed offense, but it does not vitiate the Court's obligation to independently assure that its processes have not been abused. We would think, however, that, if the breaches of which the Defendant now complains, were of sufficient gravity, they would have been broached as a part of their dispositive Motions to the District Court.

disclosure of those confidences, to opposing counsel, has occurred. Were such a presumption unavoidable, then we would find little substance in the ABA's formal opinion that "a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer." Olson v. Snap Products, Inc., supra at 544, quoting "Contact with Former Employee of Adverse Corporate Party," ABA Formal Op. 91-359 (1991). The line of demarcation, between a permissible contact, and one that is ethically improper, rests with whether privileged information has been shared during the contact.

Here, the Defendant simply presumes that confidential information was disclosed, by McDonald, to the Plaintiff's counsel, because McDonald attended a meeting over a decade previously, at which legal counsel were present. We are not presented with any showing, much less an averment, that confidential information was shared, by legal counsel, with the participants at that meeting. Undoubtedly, McDonald was privy to some privileged information in aspects of his conduct as a Claims Director, but we are not afforded any showing that the information related to any matter here in litigation. We seriously doubt, and the Defendant does not

argue, that any matrix -- if one were used -- was privileged from disclosure, given the fact that the matrices appear to have been shared with the employee with whom a noise-induced hearing loss claims was settled. Nor are we aware of anything that McDonald has disclosed, as reflected in his lengthy Affidavit in this case, which is other than historic fact, as to which no privilege ordinarily attaches. See, In re Bieter Co., 16 F.3d 929, 940-41 (8th Cir. 1994)("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."), quoting Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981), quoting, in turn, City of Philadelphia v. Westinghouse Elec. Corp., 205 F.Supp. 830, 831 (E.D. Pa. 1962).

Notably, the Defendant has failed to cite any specific utterance of McDonald, notwithstanding his extended Affidavit, which discloses privileged material. The most the Defendants are able to argue is that, presumptively, McDonald has privileged information of some sort, and they are discomforted by the fact that he could disclose that information to the Plaintiffs. We are mindful that, given the absence of a focused inquiry into McDonald's discussions with Plaintiffs' counsel, the Defendant is fettered in the arguments it can make, and is relegated to relying, in no small part,

upon implication, if not conjecture. Nonetheless, we are presented with no ethical violations here, and our ruling is necessarily dependent on the Record presented.[7] Accordingly, on this Record, we deny the Defendant's Motion to Disqualify Plaintiffs' Counsel, but without prejudice to a renewal of the Motion upon a proper showing. Further, we continue our directive, that neither of the parties to this litigation, informally meet with McDonald until such time as he is deposed in this litigation, or if no such deposition is planned, upon the grant of leave, through formal Motion, from this Court.[8]

---

[7]The Defendants heavily rely upon the ruling in In re Potash Antitrust Litigation, 1993 WL 543013 (D. Minn. December 8, 1993), where the Court disqualified a number of attorneys due to their unethical contacts with a former employee of one of the parties-defendant in that case. We would have no hesitation in reaching the same result upon a competent showing that any ethical improprieties occurred in the contacts, by Plaintiffs' counsel here, with McDonald. Both McDonald, and the attorneys involved, have denied any inquiry into privileged communications, and the Defendant has made no showing, however slight, to the contrary.

[8]As we did in Olson v. Snap Products, Inc., supra at 545, we recognize the grave nature of the Defendant's concern for the protection of its privileged communications with McDonald, if any there be, and of the Plaintiffs' abundant concern that their factual discovery not be frustrated by errant notions of privilege. We conclude that sequestering McDonald until the parties may formally make inquiry will ameliorate both sets of concerns. As we did at the time of the Hearing, with the Defendant's agreement, counsel for the Plaintiffs may continue to consult with McDonald on matters unrelated to the issues presented here, as they should arise in other legal proceedings, but they are not permitted to confer with McDonald, directly or indirectly, about matters related

(continued...)

NOW, THEREFORE, It is --

ORDERED:

That the Defendant's Motion to Disqualify Counsel for the Plaintiffs [Docket No. 46] is DENIED without prejudice to its renewal upon a proper showing.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

[8] (...continued)
to this proceeding, until his deposition is completed.