UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Duane Larson, Ronald Morris, Jr., Robert Cogger, and Thomas E. Fisher, Thomas J. Warnke, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs. ORDER

The Burlington Northern and Santa Fe Railway Company, a corporation,

Defendant. Civ. No. 01-527 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 17th day of May, 2002.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Defendant's Motion to Limit Discovery for Individual Plaintiffs before Class Certification. A Hearing on the Motion was conducted on May 16, 2002, at which time the Plaintiffs appeared by Richard A. Lockridge, Russell A. Ingebritson, Phillip G. Arnold, and Robert J. King, Jr., Esqs.; and the Defendant appeared by Weston W. Marsh,

FILED MAY 17 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

75

Gary Crosby, and Edward M. Glennon, Esqs. For reasons which follow, the Defendant's Motion is granted.

II. <u>Factual and Procedural</u>

This putative class action alleges that the Defendant engaged in a company-wide scheme to fraudulently settle the noise induced hearing loss ("NIHL") claims of its employees, under the Federal Employer's Liability Act ("FELA"), Title 45 U.S.C. §51-60.[1] According to the Plaintiffs, the employee-claimants were encouraged not to retain the advices of an attorney, were told that the claims

---

[1]In their Amended Class Action Complaint, the Plaintiffs allege as follows:

> 3. Railroad employees have been exposed to loud noises in the workplace since the inception of the railroad industry.
>
> 4. The serious health hazards of excessive noise exposure in the workplace and the problems of noise induced hearing loss have been known and recognized by the railroad industry, Defendant, and the medical profession for many decades, even before World War II.

<u>Amended Complaint</u>, at pp. 1-2, ¶¶3 and 4.

The Plaintiffs further allege that, "[n]otwithstanding the aforementioned explicit recognition of the harm being inflicted upon otherwise uninformed, innocent employees, the railroad industry, including the Defendant, decided to do nothing to either eliminate excessive noise from the workplace or to protect employees from its harmful health effects." <u>Id.</u> at p. 5, ¶11. As a consequence, in Count One of their Amended Class Action Complaint, the Plaintiffs allege that the Defendant was negligent in causing the Plaintiffs, and Class members, to suffer hearing loss claims. <u>Id.</u> at p. 47, ¶151.

would be settled by application of a formula -- that is, a settlement chart or matrix, which would assure a uniformity in settlement amounts -- and were advised that the amount of their settlement would not be different if an attorney were to represent their interests. The Defendant denies any fraudulent conduct, and raises a number of defenses to the Plaintiffs' claims, including accord and satisfaction, which is predicated upon Releases that were signed, by the four named-Plaintiffs, at the time that a settlement was reached with each of them.

The "Plaintiffs bring this case on behalf of themselves and on behalf of all persons who suffered hearing loss caused by workplace noise during their employment with Defendant and who settled their resulting Federal Employers Liability Act damages claims against Defendant without legal representation from January 1, 1988, to the present." Amended Class Action Complaint, at p. 43, ¶ 142. The Defendant avers to the belief that there were approximately 8,150 claims for NIHL, which were directly handled between a claimant, who was not represented by legal counsel, and one or more of the sixty, or so, claims representatives of the Defendant, or one of its predecessor companies, who would have responded to any such claim. See, Affidavit of John C. Kowal-kowski, at p. 2, ¶¶3, 4 and 7. Given the Defendant's separate maintenance of personnel, medical, and claims files, a "conservative" estimate suggests that

approximately 36,000 files would have to be reviewed in order to respond to the Plaintiffs' current discovery requests. Id. at ¶5. The Defendant estimates the time, and cost, involved in such a file review to approximate 720 days, and $1,296,000.00, exclusive of any effort to secure any files which may have been generated by the twenty-four, or so, law firms which have represented the Defendants in such matters. Id. at ¶¶6 and 7.[2]

At the time of the Hearing, the Plaintiffs acknowledged that their request for the files related to the 8,150 NIHL claims could be deferred, and that delaying a class certification Motion until the time for the Trial approached would be "pushing the envelope" some, but that, nonetheless, the discovery they have submitted to date would be just as relevant, and germane, even if the District Court were to deny class certification. As a consequence, the Plaintiffs urge that class discovery is "inextricably intertwined"

---

[2]In addition, the Plaintiffs have asked for production of the Defendant's documents which were a part of the Court-sealed Record in two Declaratory Judgment actions which the Defendant had commenced against two of its insurers, and which related to the Defendant's insurance coverage as to NIHL claims. See, Burlington Northern Railroad Co. v. Aetna Casualty & Surety Co., Civ. No. 92 MR 164 (20th Judic. Cir., St. Clair, Ill.); Atchison, Topeka and Santa Fe Railway Co. v. Stonewall Ins. Co., Civ. No. 94 CV 1464 (Shawnee County District Court, Kansas). The Defendant avers that these Court proceedings generated 745 boxes of documents, and that it would require some 36,000 hours, and approximately $5,000,000.00, to review those files, exclusive of the actual cost of copying the documents.

with merits discovery, so as to commend a rejection of the Defendant's effort to restrict discovery to class issues.

III. Discussion

Properly framed, the Defendant's Motion seeks to bifurcate discovery so as to focus on class-related discovery in preparation for a class certification Motion, before an exhaustive exploration of the merits of the class claims.[3] The Defendant takes strong exception to the Plaintiffs' apparent interest in deferring a Motion to Certify the Class until the case approaches a Trial, and underscores the guidance provided by Rule 23(c)(1), Federal Rules of Civil Procedure, that, "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." In turn, the Plaintiffs are equally outraged by the Defendant's apparent interest in precluding, if not blunting, any intrusive inquiry into the practices the Defendant employed in settling, on a near nationwide basis, employee claims for NIHL.

[3]Having framed the issue, which is presented by the only Motion before us, it is plain that we are not now called upon to rule upon any request for a Protective Order to delimit the Plaintiffs' discovery that has already been served, nor, obversely, do we confront any request that responses to discovery be compelled from the Defendant. Nonetheless, the extent to which, ultimately, we will caused to resolve such matters will be fundamentally impacted by our grant of the Motion to bifurcate.

Neither of the parties' positions are without support in the Manual for Complex Litigation, Third Edition ("MCL, Third"). For its part, the Defendant cites that portion of Section 30.12 of the Manual, which provides as follows:

> Precertification discovery should be structured to facilitate an early certification decision while furthering efficient and economical discovery on the merits. The determination whether the prerequisites of Rules 23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with relatively little need for discovery. To the extent discovery is needed prior to the certification hearing, it should be directed at the named parties; only upon a demonstration of need -- for example, where persons are identified as having information relevant to certification issues -- should discovery of putative class members be permitted. If discovery is needed, the court may want to (1) impose appropriate limitations on the number and scope of depositions and other discovery directed at class representatives, and (2) establish a limited time period within which to conduct specific class-related discovery.

MCL, Third, at p. 215.

On the other hand, the Plaintiffs place great weight on the portion of Section 30.12 which reads as follows:

> Bifurcating class and merits discovery can at times be more efficient and economical (particularly when the merits discovery would not be used if certification were denied), but can result in duplication and unnecessary disputes among counsel over the scope of discovery. To avoid this, the court should call for a specific discovery plan from the parties, identifying the depositions and other discovery contemplated and the subject matter to be

> covered. Discovery relating to class issues may overlap substantially with merits discovery. A key question in class certification may be the similarity or dissimilarity between the claims of the representative parties and those of the class members -- an inquiry that may require discovery on the merits and development of basis issues.

Id. at pp. 215-16.

Obviously, neither portion of the Manual is Cinderella's shoe -- fashioned for a precise fit.

Here, we conclude that the mandate of Rule 1, Federal Rules of Civil Procedure, is best implemented by bifurcated discovery -- that is, by completing discovery as to the claims of the four named-Plaintiffs, prior to extensive discovery on the merits of the "class claims." In practical effect, as the parties implicitly concede, merits discovery, and class discovery, could well overlap as to the claims of the named-Plaintiffs. The Defendant acknowledges that the Plaintiffs should be able to depose those persons whose knowledge is implicated by the testimony of those directly involved in handling the named-Plaintiffs' NIHL claims. The Plaintiffs agree, but they would initiate the discovery at the highest levels of the claims handling process, rather than at the level which acted, one-on-one, with the named-Plaintiffs. We find the Defendant's approach most consonant with the directives of Rule 1.

According to the Plaintiffs' Amended Class Action Complaint, three different claims agents, who worked for the Defendant or one

of its predecessor companies, participated in the settlement of the named-Plaintiffs' NIHL claims. Each of these claims representatives is alleged to have employed a "chart," "graph," or "formula," upon which the settlement value of the claim would be resolved, each made reference to an "AMA value," and each expressed the view that a greater settlement sum would not be forthcoming simply because the Plaintiff had engaged the services of an attorney. We are satisfied that if, as the Plaintiffs allege, there was a company-wide scheme to discourage NIHL claimants from employing counsel so as to unfairly secure a less-than-value settlement of the Plaintiffs' claims, then inquiry at the first level of the Defendant's claims process -- the claims agent directly involved in settling the named-Plaintiffs' claims -- would generate critical information concerning the existence, if any there be, of a fraudulent scheme. While we cannot now accurately limit the exterior boundaries of that inquiry, we are satisfy that they would not, at least at first blush, envelop the breadth of discovery that the Plaintiffs have currently served.

We find that bifurcation is not only prompted by the showings required by Rule 23(a) and (b), Federal Rules of Civil Procedure, but also by the uniqueness of the putative class claim that the Plaintiffs have asserted. While, at this preliminary stage, we cast no projections as to the potential success of a certification

Motion, the claim alleged by the Plaintiffs is potentially fraught with factual distinctions which could render certification problematic. In part, the Plaintiffs seek to litigate, in some fashion, the causal negligence of the Defendant in fostering the NIHL symptoms claimed by the putative class. While such issues of causation are not, as a matter of law, immune to class certification, we deal here with no mass tort in which such an issue of causation is identical for each class member.

In addition, the portion of their class claim allegations, which contend that fraud in the inducement of a settlement agreement should vitiate the releases the named-Plaintiffs signed, do not easily lend themselves to classwide litigation. Such claims frequently founder on the shoals of "predominance;" the class is precluded because the questions of law and fact, which are common to the class members, do not predominate over questions affecting only individual members. See, Rule 23(b)(3), Federal Rules of Civil Procedure; and see, e.g., In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig., 201 F.R.D. 456, 464 (D. Minn. 2001); In re Hartford Sales Practices Litig., 192 F.R.D. 592, 605 (D. Minn. 1999); Parkhill v. Minnesota Mut. Life Ins. Co., 188 F.R.D. 332, 342 (D. Minn. 1999), aff'd on other grounds, 286 F.3d 1051 (8th Cir. 2002); but see, In re Lutheran Brotherhood Variable

Ins. Prods. Co. Sales Practices Litig., supra at 463; Snell v. Allianz Life Ins. Co., 2000 WL 1336640 at *13-14 (D. Minn. 2000).[4]

We conclude that a reasonably expeditious resolution of the certification question will advance the purposes of Rule 1, without denying the Plaintiffs a practicable basis upon which to move for class certification. Our conclusion is corroborated by the proposed merits discovery deadlines which the parties have respectively presented for our review. The Defendant, which endorses bifurcated discovery, proposes a general discovery cutoff of August 29, 2003, as do the Plaintiffs, who deny the need for bifurcation. We are confident that the dynamics of this action, together with the ultimate scope of discovery, will be critically impacted by the District Court's resolution of the certification issue, however it may be decided.

[4]Our decision in Snell related to the certification of a settlement class action, when involved an essentially stipulated Record which was easily distinquishable from either that presented in Parkhill, or Hartford. See, Snell v. Allianz Life Ins. Co., 2000 WL 1336640 at *13-14 (D. Minn. 2000). We have no expectation that the parties, here, will stipulate that the presentations to the NIHL claimants was uniform, scripted, or standardized, as was the presentations in both In re The Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 314-15 (3rd Cir. 1998), cert. denied, 525 1114 (1999), upon which we relied, and in Snell, although discovery may prove that to have been the case. See, generally, In re LifeUSA Holding Inc., 242 F.3d 136, 146 (3rd Cir. 2001).

Accordingly, we grant the Motion to Bifurcate and limit discovery for the next ninety-days, unless an earlier or later date is determined to be appropriate, to the class certification issues. We direct the Plaintiffs to serve and file their Motion to Certify the Class **by no later than one-hundred and five days after the date of this Order**, absent further Order of the Court. A Hearing date for the Motion to Certify should be secured so as to assure a prompt resolution of that issue, and the parties shall agree upon a briefing schedule which complies with Local Rule 7.1(b)(2), as well as the Hearing date that is secured from the District Court.[5] The parties are directed to meet and confer, with specific regard to the scope of discovery, and the means of facilitating the taking of any requisite depositions, and they are to submit a joint Rule 26(f) Report to this Court **by no later than May 24, 2002**, and they are to jointly contact this Court's Judicial Assistant, **by no later than May 28, 2002**, for the purpose of scheduling a telephonic Rule 16 Conference.

NOW, THEREFORE, It is --

---

[5]During the course of the Hearing, the Defendant suggested, on several occasions, that it would be promptly filing dispositive Motions with the District Court. If any such Motions are to be filed, we suggest that, as a convenience to the District Court, thought be given to jointly scheduling the Motions with the Motion to Certify.

ORDERED:

1. That the Defendant's Motion to Limit Discovery to Individual Plaintiffs Before Class Certification [Docket No. 66] is GRANTED.

2. That the parties are directed to undertake the further actions that are detailed in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE