UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

Duane Larson, Ronald Morris, Jr., Robert Cogger, and Thomas E. Fisher, Thomas J. Warnke, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs. MINUTE ORDER

The Burlington Northern and Santa Fe Railway Company, a corporation,

Defendant. Civ. No. 01-527 (JEL/RLE)

* * * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 9th day of September, 2002.

I. Introduction

On September 5, 2002, the Court heard argument on the Plaintiffs' Motion to Compel Discovery, and on their Motion to Extend Discovery and Briefing of Class Certification Deadlines.[1] At the time of the Hearing, the Plaintiffs appeared by Robert J. King, Jr., Russell A. Ingebritson, and Robert K. Shelquist, Esqs.; and the Defendant appeared by Weston W. Marsh, Esq. For reasons which

[1]We were also scheduled to hear the Defendant's Motion to Amend its Answer and Add Counterclaims, but the Plaintiffs advised, by letter dated August 27, 2002, that they did not oppose that Motion and, therefore, the same is granted.

SEP 0 9 2002
FILED____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD____
DEPUTY CLERK____

(109)

follow, we grant, in part, the Motion to Compel Discovery, and we grant, in part, their Motion to Extend Discovery and Briefing of Class Certification Deadlines, so as to extend those deadlines for a period of forty-five (45) days from the date of this Order.

## II. Discussion

### A. The Plaintiff's Motion to Compel Discovery.

If déjà vu involves a sense of feeling "something overly or unpleasantly familiar," then, what we confront here, is déjà vu squared. Webster's Ninth New Collegiate Dictionary, Merriam-Webster, Inc., Springfield, Mass. (9th Ed. 1984) at 335. By Order dated May 17, 2002, we granted the Defendant's Motion to Limit Discovery for Individual Plaintiffs Before Class Certification. See, Docket No. 75. In explaining our preference for bifurcated discovery, we reasoned as follows:

> [W]e conclude that the mandate of Rule 1, Federal Rules of Civil Procedure, is best implemented by bifurcated discovery -- that is, by completing discovery as to the claims of the four named-Plaintiffs, prior to extensive discovery on the merits of the "class claims." In practical effect, as the parties implicitly concede, merits discovery, and class discovery, could well overlap as to the claims of the named-Plaintiffs. The Defendant acknowledges that the Plaintiffs should be able to depose those persons whose knowledge is implicated by the testimony of those directly involved in handling the named-Plaintiffs' NIHL [i.e., Noise Induced Hearing Loss] claims. The Plaintiffs agree, but they would initiate the discovery at the highest levels of the

> claims handling process, rather than at the level which acted, one-on-one, with the named-Plaintiffs. We find the Defendant's approach most consonant with the directives of Rule 1.

Id. at 7.

We went on to recognize that, according to the Plaintiffs' Amended Class Action Complaint, three different claims agents, who worked for the Defendant, participated in the settlements of the named-Plaintiffs' NIHL claims. As we went on to detail:

> Each of these claims representatives is alleged to have employed a "chart," "graph," or "formula," upon which the settlement value of the claim would be resolved, each made reference to an "AMA value," and each expressed the view that a greater settlement sum would not be forthcoming simply because the Plaintiff had engaged the services of an attorney. We are satisfied that if, as the Plaintiffs allege, there was a company-wide scheme to discourage NIHL claimants from employing counsel so as to unfairly secure a less-than-value settlement of the Plaintiffs' claims, then inquiry at the first level of the Defendant's claims process -- the claims agents directly involved in settling the named-Plaintiffs' claims -- would generate critical information concerning the existence, if any there be, of a fraudulent scheme. While we cannot now accurately limit the exterior boundaries of that inquiry, we are satisf[ied] that they would not, at least at first blush, envelop the breadth of discovery that the Plaintiffs have currently served.

Id. at 8.

In no small measure, our determination was influenced by the Defendant's representation that, about 7,000 to about 15,000 claims

files, would be subject to discovery if the Plaintiffs' top-to-the-bottom approach were adopted.

No appeal was taken from our bifurcation Order and, while we were called upon to address other discovery issues, the parties did not draw our attention back to the scope of discovery, until we received a letter, from counsel for the Plaintiffs, which was dated July 15, 2002, and which sought to employ this Court's "open door" policy so as to informally resolve a discovery dispute. The issues to be presented, as explained by Plaintiffs' counsel, were identified as follows:

> We stand by our view that we are entitled to discover all information about (1) the BNSF hearing loss claims settlement program, including at least a sample or specimen of each and every "matrix" or "work sheet" that was used by the railroad to value claims and the identity of key railroad employees or representatives involved with the creation and implementation of this program; (2) the railroad/s general claims handling rules and practices relating to unrepresented employees; and (3) documents relating to the named plaintiffs.

By letter dated July 22, 2002, counsel for the Defendant responded to the Plaintiffs' identified discovery issues. As to the documents related to the named-Plaintiffs, the Defendant expressed no objection, and explained that the Defendant's personnel had misunderstood the scope of that request, but that misunderstanding would be promptly corrected.

As to the "matrices," or "worksheets," the Defendant reiterated its objection that, to produce specimen copies of all such documents, would necessitate the review of some 7,000 claims files -- a prospect that the Defendant correctly understood we had denied in our Order of May 17. The Defendant acknowledged that three matrices had been uncovered in the production related to the named-Plaintiffs, but it asserted that those documents were privileged and, therefore, they had been identified on the Defendant's Privilege Log, but had not been produced to the Plaintiffs. According to the Defendant, absent a Court Order, it would not produce those documents. Lastly, with respect to the Plaintiffs' request for a copy of the Defendant's Claims Manual, the Defendant objected to such a disclosure, since counsel for the Plaintiffs are predominantly involved in claims against the railroads, including the Defendant, and, therefore, to disclose the attorney work product, which resulted in the Claims Manual, would prejudice the Defendant in unrelated FELA claims.

On July 23, 2002, we heard argument on those informal discovery disputes and, at the outset, observed that many of the issues presented we considered as having been previously decided. As the parties had represented, the dispute, which centered on the named-Plaintiffs' claims files, had been resolved prior to July 23. With regard to the matrices, we reiterated our prior view -- which

was based on the Defendant's assertion that a separate file, which contained specimen copies of the matrices, was not extant -- we encouraged the Plaintiffs to either take the depositions of the three claims agents, who were involved in negotiating the named-Plaintiffs' NIHL claims, or take a Rule 30(b)(6) deposition as to someone who would have been knowledgeable about the Defendant's NIHL claims resolution process. To the extent that the Defendant was claiming a privilege, which would insulate the matrices from discovery, we expressed our doubt as to the validity of that assertion -- in view of the core issues presented here -- and directed the parties to "meet and confer" on that issue.

As to the Defendant's Claims Manual, counsel for the Defendant agreed to produce that portion of the Manual which dealt with the processing of hearing loss claims, as well as the "Introduction," and the "Vision Statement" sections, of the Manual. We advised the parties to "meet and confer" as to any other sections of the Manual, which would appear to be relevant to the claims presented in this case. In addition, the Plaintiffs complained that, while the Defendant had produced some 20,000 documents, the papers produced were not collated correctly, were misfiled in some instances, and in others, pages appeared to have been missing. Again, we directed the parties to "meet and confer," on those topics, so as to exhaust

their efforts to resolve the matter before engaging further Court intervention.

Given our directives, as well as the delimited period in which the parties could engage in discovery, we advised the parties that we would be attending our Minneapolis Calendar on July 30, and 31, 2002, and that we would be prepared to resolve any remaining disputes on July 30, at 2:30 o'clock p.m., in Courtroom 12W in the Minneapolis Courthouse. We directed the Defendant to provide a copy of its Claims Manual, at that time, if any disputes with respect to that Manual remained. Further, we directed the parties to draw any remaining disputes, with respect to the 20,000 documents, to our attention for disposition and, if the claimed privileged status of the matrices, which had been uncovered by the Defendant, remained in contention, the parties were directed to present their respective views, in writing, as to whether the matrices were discoverable, or privileged, in advance of the Hearing scheduled for July 30. We also expressed our view, that the Plaintiffs should proceed with the depositions of the three claims agents of the Defendant, and that we would not restrict any such discovery so as to prejudice any party.[2] Further, we pledged our availability, and

[2]Specifically, we advised the Plaintiffs that, apart from the depositions we referenced, they could always contend that they had not received the documents which they felt were essential to a re-
(continued...)

advised the parties that they should not permit "two or three weeks" to expire before they sought a resolution of the pending disagreements. Little did we think that, in this advisory, the parties should conclude that they should allow more than "two or three weeks" to expire before they sought Court intervention.

Since our rulings, on July 23, narrowed, but did not fully resolve the parties' differences and, since we would be considering any continuing disagreements, if any existed, on July 30, we did not issue a written ruling on the matters heard on July 23. See, Docket No. 98. On July 30, 2002, however, we did **not** hear further from the parties, and we concluded, as a result, that the issues had been resolved to the parties' mutual satisfaction. Again, no party appealed our rulings of July 23.

Now, we confront the Plaintiffs' Motion to Extend the Discovery and Briefing of Class Certification Deadlines, in which they

---

[2](...continued) sponsible deposition of the claims agents. Notwithstanding their plain rejection of that view, we note that the Plaintiffs have received the deposition transcript of Glenn McDonald, who was a claims representative of the Defendant, and who was deposed in a somewhat paralleling proceeding, which disclosed the names of certain representatives of the Defendant, who the Plaintiffs now wish to depose. In our view, there is seldom an occasion when, in advance, a litigant believes that it has sufficient document production to assure a successful deposition of an opposing witness, but the refusal to take a deposition, until those "unavailable" documents are produced, is a perilous venture. On frequent occasion, documents are uncovered by means of the deposition process.

request an additional ninety (90) days, in which to complete those respective tasks, and also their Motion to Compel Discovery, which reiterates the same discovery issues that we had addressed during the Hearing on July 23. With candor, counsel for the Plaintiffs expressed uncertainty as to whether the Plaintiffs' Motion was one for reconsideration -- even though it was not denominated as such, and was in violation of our Local Rules which relate to such Motions -- or was an attempt to accomplish what, apparently, had eluded the parties after the Hearing on July 23. To the extent that the Motion seeks a reconsideration, that request is denied, for the Plaintiffs present nothing which was not adequately addressed previously.

Notably, the Plaintiffs have yet to take any depositions, either of the three claims agents, or of a Rule 30(b)(6) deponent. They offer two reasons for that default. First, they relate that the Defendant refused to allow those depositions until the depositions of each of the named-Plaintiffs had been completed. Of course, that proffered justification carries no merit. Rule 26(d), Federal Rules of Civil Procedure, provides in pertinent part:

> Unless the court upon motion, for the convenience of the parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise,

> does not operate to delay any other party's discovery.

A deferral of discovery, for the Plaintiffs' first asserted reason, is a canard.

As a second justification, the Plaintiffs continue to contend that, in their view, the depositions should not proceed until they are satisfied that they have received all of the documents that are responsive to their discovery requests. As we have noted, during the Hearing on July 23, we encouraged the Plaintiffs to commence the discovery process, by taking certain depositions, since that discovery effort would, almost inevitably, prompt the disclosure of other relevant documents. Our encouragement was ignored -- a plainly proper election -- but one which plainly weighs against the Plaintiffs' ability to demonstrate "good cause" for any extension in the currently established pretrial deadlines.

More specifically, the Plaintiffs continue to assert that they are entitled to all of the Defendant's matrices, to every portion of the Defendant's Claims Manual, and to any papers, which may be missing from, or misfiled in, the 20,000 documents that the Defendant has produced. With but one exception, we have addressed the Defendant's matrices to the point of exhaustion, and we will not reiterate that discourse again. The exception relates to the Defendant's claim that the matrices are privileged. Having denied

the Plaintiffs' Motion for Reconsideration, we need only address the issue of privilege. Strangely, the Defendant's Memorandum in Opposition to the Plaintiffs' Motion fails to address that issue of privilege -- in fact, the portion of the Defendant's Response to the Plaintiffs' Motion to Compel, insofar as it relates to "Matrices or Worksheets," does not so much as mention the word "privilege." Rather, the Defendant limits its response to an expression of righteous indignation that, once again, the Plaintiffs are reiterating their same argument.

Given our previous indication, that we seriously doubted that a blanket privilege would insulate the Defendant's matrices from discovery, as well as our specific instruction that, if the issue was not amicably resolved, then the parties were to provide reasoned legal briefing as to the bases of any claimed privilege, or of any claimed entitlement to discover those papers, we conclude that the Defendant has waived any serious assertion that a privilege attaches to the subject matrices.[3] Accordingly, the Defendant is directed to produce those matrices forthwith. We are convinced that, if any recognized privilege actually attached to the matric-

---

[3]Consistent with our direction, at the Hearing on July 23, the Plaintiffs have argued the bases for a waiver of any applicable privilege, and the Defendant has failed to advance any response to those arguments.

es, the Defendant would have substantiated the claimed privilege by cogent legal and factual arguments. The Defendant has not.

As to the request for those portions of the Claims Manual, which the Defendant has not voluntarily produced, we deny the Motion as devoid of a responsible legal basis. The Plaintiffs do not advise that they have "met and conferred," as we had previously directed, nor do they advance any argument, that we have not previously considered, and rejected, for the disclosure of the portions of the Manual that the Defendant has not volunteered. As we expressed, during the Hearing on July 23, counsel for the Plaintiffs predominately concentrate their practice to the representation of railroad employees who claim injuries during the course and scope of their employment. Absent some compelling demonstration, that the production of the entire Claims Manual is relevant to this case -- and such a showing has not been made -- we conclude that the entire contents of the Defendant's Claims Manual need not be produced.[4]

---

[4]We find it ironic that, during the course of our Hearing on July 23, 2002, one of the counsel, who represents the Plaintiffs, acceded to the view of defense counsel, that the entirety of the Defendant's Claims Manual should not be produced. We find counsel's view to be well-founded. In contrast, one of the Plaintiffs' other counsel suggested, that the Manual could assist in demonstrating that the Defendant's agents were negligent in negotiating the settlements here at issue by, assertedly, in their failure to adhere to the procedures specified in the Claims Manual. We find
(continued...)

More distressing, however, is the fact that, when the Defendant conditioned its production on the entry of a Protective Order, the Plaintiffs allowed weeks to expire before they seriously attempted to draft such an Order. The preparation of an appropriate Protective Order does not require the skills of a specialized, transactional attorney -- that weeks were consumed in that process speaks volumes as to the Plaintiffs' interest in advancing this case to Trial, much less to a Certification Hearing. To our understanding, the Protective Order has yet to be finalized.

Lastly, with respect to the 20,000 documents, that the Defendant has produced, we previously prescribed a procedure by which any deficiencies in that production could be corrected. The Plaintiffs elected to ignore that procedure but, nonetheless, they now complain that every document has not been produced. At the Hearing on the Plaintiffs' current Motions, the Defendant acceded to the Plaintiffs' request, that they be allowed to review the originals

---

[4](...continued)
this suggestion telling. The Plaintiffs' allegations, in this case, are not pinioned on a claim of negligence -- rather, the Plaintiffs assert intentional, not negligent, wrongful conduct. With unrestricted access to the Claims Manual, we can envision a raft of claims that, in unrelated FELA claims, Plaintiffs' counsel will assert, as they have here, negligence claims that would, otherwise, be unavailable to them by virtue of a properly asserted attorney work-product privilege. We find no relevance in the entirety of the Claims Manual, and the Plaintiffs have not demonstrated to the contrary.

of the documents produced.[5] Accordingly, the Plaintiffs should be afforded an opportunity to review the 20,000 documents, in the depository where they are being maintained.

B. The Plaintiffs' Motion to Extend Discovery and Briefing of Class Certification Deadlines.

We are not persuaded that the Plaintiffs are entitled to a ninety-day extension of the deadlines, as to which they request an adjustment.[6] The Plaintiffs were afforded an opportunity to definitively dispose of the issues, that they currently raise, but they chose, for reasons which are not apparent, or explained, to forego that opportunity to resolve any remaining disputes on July 30, 2002. Beyond that, we note that the Plaintiffs are fully familiar with this Court's "open door" policy, which allows any

---

[5]The Defendant has represented that several documents, as to which it claims privilege, will be provided to the Court for an in camera review, and that it will furnish the Court with identifiers, which will inform the Court as to the identity of any persons who authored, or received, the documents to be reviewed, and will provide the Court with specificity as to the bases, should they exist, for the privilege being asserted. The Defendant is directed to provide those same identifiers, and justifications, to the Plaintiffs. One week after the disclosure of the Defendant's identifiers, the Plaintiffs may respond to the privilege being claimed, to the extent that a response is required.

[6]At the close of the Hearing, we initially suggested that we were amenable to a ninety-day extension but, upon instant reflection, we determined that the issue required further consideration, and we advised the parties accordingly. Having considered the Plaintiffs' request, in the context of the pretrial progression of this case to date, we have reached a dramatically different conclusion.

party, who appears before this Court, to raise, promptly, any pre-trial discord for the Court's resolution. Instead, we find that the Plaintiffs chose to stall the progression of this case and, unfortunately, they have found no resistance, from the Defendant, in that goal. Rather, it appears to us that neither party is particularly interested in a timely advancement of this case to Trial. Both have ignored, we find deliberately, our expressed instruction as to how their pretrial disputes should be fairly resolved. We will sanction further such conduct, as appropriate.

While, given the parties' joint delays -- albeit for plainly different reasons -- a modest modification of our previous Scheduling Order is required, we do so only to spare the District Court of the same state of unpreparedness that this Court has endured. We find that an additional extension of forty-five (45) days should be afforded to the parties, with respect to both the discovery deadline, and the briefing schedule for the Class Certification Motion. At the Hearing in this matter, the Plaintiffs pledged dispatch in the taking of the depositions they wish to note, and forty-five (45) additional days to accomplish that which could have been commenced months ago, seems entirely adequate. Absent some particularly compelling reason to do so, we will not entertain a further Motion to extend the deadlines. We have proffered, and we continue to proffer, our availability to address, and resolve, any

discovery disputes with dispatch, but the parties have been content to pace the progression of this case at a cadence far different from that which we had directed, and that practice will not be allowed to continue.

To grant a greater length of extension would plainly require a disdain for the mandate of Rule 1, Federal Rules of Civil Procedure, that matters, such as this one, be afforded a just, speedy, and inexpensive, resolution. If, as they contend, the Plaintiffs truly believe that they have a meritorious claim, they best ought to advance that claim to Trial, or risk the prospect of a dismissal for lack of prosecution. On the other hand, if the Defendant should errantly believe, that a recalcitrant compliance with its discovery obligations should suffice, we will promptly disabuse it of any such notion.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendant's Motion to Amend its Answer and Counterclaim [Docket No. 95] is GRANTED.

2. That the Plaintiffs' Motion to Compel Discovery, and to Extend Discovery and Briefing of Class Certification Deadlines [Docket No. 100] is GRANTED in part.

3. That the discovery deadline is extended to **October 24, 2002**, the nondispositive Motion deadline is extended to **October 24,**

**2002,** and that the Plaintiffs' Motion to certify the putative class must be served and filed no later than **October 24, 2002.**

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE