UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Duane Larson, Ronald Morris, Jr., Robert Cogger, and Thomas E. Fisher, Thomas J. Warnke, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs. ORDER

The Burlington Northern and Santa Fe Railway Company, a corporation,

Defendant. Civ. No. 01-527 (JEL/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 10th day of October, 2002.

## I. Introduction

By Order dated September 9, 2002, we directed the Defendant to produce, for our in camera review, those documents that it had claimed as privileged, in its privilege log. We also resolved, in that and previous Orders, the parties' various discovery disputes, or we provided them a mechanism by which those disputes could be resolved. Apparently, all of the discovery disputes, but one, have been informally resolved.[1] For reasons which follow, we reject the

[1]The parties have submitted letter briefs on the issues atten-
(continued...)

OCT 1 . 2002

Defendant's claim of irrelevancy, and privilege, and direct the Defendant to disclose the document to the Plaintiffs.

## II. Factual and Procedural Background

The document that remains in issue is four-pages in length, and was prepared, at some unspecified time, by Richard Lifto ("Lifto").[2] We understand that, at the time that the document ("the Lifto Document") was prepared, Lifto was the General Director of Claims for the Western Region of the Defendant. The Defendant claims that the Lifto Document is irrelevant, since it was not used by Lifto "as the actual format for settling any particular claim," and is also privileged on attorney-client and work product grounds. As to attorney-client protection, the Defendant suggests that the doctrine applies "to the extent it was communicated to others within [the Defendant's] Claims Department." For work product purposes, the Defendant claims that the Lifto Document reflects "Lifto's thought process and authority in settling claims." According

[1](...continued)
dant to the one document which remains in contention. These briefs, and related papers, are largely repetitive of factual arguments, and legal authorities, that they have previously presented to this Court. While the parties expressed their availability if the Court wished to hear further argument, we are fully informed, by our past excursions into the same issues presented, and we deem the matter submitted on the parties' writings.

[2]The document was submitted for our in camera review, and our ruling is based upon the results of that review.

to the Defendant, since the Lifto Document was not employed to settle any hearing loss claims, its production would merely disclose confidential information that counsel for the Plaintiffs, who concentrate in personal injury actions against the Defendant and other railroads, could employ, to the Defendant's disadvantage, in settling unrelated claims.

For their part, the Plaintiffs suffer, somewhat, from not having reviewed the document, but it appears, from the Plaintiffs' submissions to the Court, that the Defendant properly disclosed such identifying information, as would inform the Plaintiffs of the basis for the privileges being claimed. As related by the Plaintiffs, several versions of the Lifto Document -- previously described, generically, as settlement "matrices and worksheets" -- have been disclosed, either from the Defendant, or from third-parties who are unrelated to this case. The Plaintiffs stress that the core of their action is the assertion that the Defendant employed such matrices in order to deny unrepresented "noise induced hearing loss" ("NIHL") claimants the same monetary settlements, for such injuries, that were offered to those employees, or former employees, who were represented by legal counsel. The Plaintiffs surmise that the Lifto Document represents "the headwaters of the settlement matrix stream," and that the other matrices flowed from that source. As such, the Plaintiffs deny that any privilege could

insulate these documents from their discovery, much less the privileges claimed by the Defendant. Further, the Plaintiffs underscore that, even if a work product privilege attached, they have shown "substantial need and undue hardship" as to overcome the protections of such a qualified privilege.

## III. Discussion

Having previously addressed, as recently as in our Order of September 9, 2002, some of the considerations which again confront us, we are not disposed to reiterating, much less reconsidering, our prior determination that the "matrices," which previously had been claimed as privileged, be produced. The Defendant has offered no additional or distinctive support for a different conclusion.[3] Nonetheless, we briefly address the bases the Defendant proffers in claiming the Lifto Document to be both irrelevant, and privileged.

---

[3]Our Local Rules plainly provide that "[m]otions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances." D. Minn. L.R. 7.1(g). The Defendant has not requested leave to file a Motion to reconsider, and the reasons which it offers for that extraordinary relief, in their current written submissions, were adequately addressed in our Order of September 9, which followed our review of all of the Defendant's previous submissions on the same issue, notwithstanding the Defendant's present contention that we overlooked something. The Defendant, then and now, asserts a blanket privilege untethered to any cogent factual particulars, and we do not now, nor did we then, find those arguments persuasive.

A. Relevancy. Rule 26(b)(1), Federal Rules of Civil Procedure, allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." A plain, unadorned reading of the Lifto Document establishes its relevancy, and the Defendant's arguments to the contrary are pure sophistry.[4]

B. The Attorney-Client Privilege Claim. The Defendant contends that, "to the extent that [the Lifto Document] was communicated to others within [the Defendant's] Claims Department," the attorney-client privilege attaches. Notably, no authority is offered for that proposition. Were the transmittal of relevant evidence to the transmitter's attorney sufficient to insulate that evidence from discovery, law firms would be housed in massive document warehouses, with little other usable space than for document storage. As the Supreme Court has explained:

> [T]he protection of the [attorney-client] privilege extends only to communications and not to facts. A fact is one thing and a

[4]We decline to fully explicate our finding of relevancy, for fear of prematurely disclosing the contents of the Lifto Document, but we seriously doubt that its relevancy would escape detection even in the most cursory of reviews.

> communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981), quoting Philadephia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962); see also, Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 645-46 (D. Minn. 1996)("We * * * advised the parties that, consistent with the well-settled principles of privilege, each is entitled to the facts underlying each others' investigations but are not entitled to a party's communications with its attorney."); In re Grand Casinos, Inc., 181 F.R.D. 615, 622 (D. Minn. 1998).

Here, we find no privileged communication, to or from an attorney, which would find protection under the attorney-client privilege, and we reject that claim of protection as wholly without merit.

C. The Work Product Privilege. Citing a series of cases for the unremarkable proposition, that the work of a claims agent may find protection under the work product doctrine, the Defendant contends that the Lifto Document is entitled to that form of insulation from discovery. To be sure, agents of attorneys, in preparing for litigation, can find protection under the work product doctrine, see, Sauer v. Burlington Northern Railroad Company, 169 F.R.D. 120 (D. Minn. 1996), but that does not mean that every action of the claims agent warrants that protection. Rather, the factual context, in which the document was produced, must be closely examined when determining whether the privilege should

apply. See, Banks v. Wilson, 151 F.R.D. 109, 112 n. 4 (D. Minn. 1993)("In this Circuit, the work-product doctrine is fact-dependent * * *.").

Here, the Defendant suggests that the Lifto Document "reflects Mr. Lifto's thought process and authority in settling claims." While we have no reason to doubt that any intelligible document, which is prepared by anyone, will disclose some of the author's thoughts, we have no reason to believe that, standing alone, that factor weighs heavily in the balance. Under the circumstances presented, we are unable to tell what thoughts -- let alone some that were strategic or tactical -- are expressed in the Document.

As for the notion that the Document will disclose Lifto's settlement authority, we are unable to discern how the numbers contained in the Document, inclusive of those recited at the bottom of the third page, would disclose anything truly privileged. When we directed the Defendant to submit the documents for in camera review, which had eluded an amicable resolve by the parties, we expressly instructed the Defendant to "furnish the Court with identifiers, which will inform the Court as to the identity of any persons who authored, or received, the documents to be reviewed, and will provide the Court with specificity as to the bases, should they exist, for the privilege being asserted." See, Minute Order

of September 9, 2002, at p. 14 n. 5. Unfortunately, the Defendant appears not to have heeded our instruction.

If the numbers contained in the Document disclose the limits of Lifto's authority to settle a claim, we are still without a showing of privilege. Presumably, Lifto would be the first to inform a claimant, or the claimant's attorney, that discussing settlement with him, over and above a certain monetary amount, would be fruitless, as he could not settle a claim which exceeded his authority. Such a limit on settlement authority says nothing about the true value of the claim, or any tactical or strategic Trial information, it merely recites the restrictions the Defendant has placed upon Lifto's ability to resolve any claim that exceeds a designated amount. How such a limitation could be viewed as work product escapes us.[5] Nor can we tell, and the Defendant does not inform us, whether the numbers in question are hypothetical, are illustrative, or are time-dated -- that is, they are limited to a

[5]While the Defendant expresses concern, that the disclosure of the Document will give some advantage to claimants, and their attorneys, by disclosing where Lifto's settlement authority expires, we are not persuaded that the concern is well-founded. Either a claims agent has authority to settle a claim "on-the-spot" or the claims agent does not. These are simple matters of fact, and corporate policy, which have no relationship to the value of the claim sought to be settled. The only advantage that it would appear to lend to the claimant would be the foreknowledge that attempting to negotiate a claim above Lifto's settlement authority could be a waste of the claimant's time.

certain point in time. In any event, the Defendant has offered no explanation of those numbers which would suggest the invocation of work product, and accordingly, it has failed to sustain its burden that the document is privileged.

Finding no basis to preclude the Plaintiffs' discovery of the Lifto Document, we direct the Defendant to produce that document to the Plaintiffs, forthwith.[6]

NOW, THEREFORE, It is:

ORDERED:

That, the Defendant will produce the document listed on its privilege log as P-BN-LARS 000096-99 to the Plaintiffs, forthwith.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

[6]In order to preserve the status quo, should the Defendant appeal this directive to the District Court, the Document need not be disclosed until a final ruling on that appeal is secured.