UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

Duane Larson, Ronald Morris, Jr., Robert Cogger, and Thomas E. Fisher, Thomas J. Warnke, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs. ORDER

The Burlington Northern and Santa Fe Railway Company, a corporation,

Defendant. Civ. No. 01-527 (JEL/RLE)

* * * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 13th day of February, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiffs' Motion to Compel.[1] A Hearing on the Motion was con-

[1]We also heard argument on the Defendant's Motion for Default or, in the Alternative, to Set Briefing Schedule on dispositive Motions. As we expressed at the time of the Hearing, we find no basis for a "default" ruling, and the scheduling of dispositive Motions for hearing is distinctly the prerogative of the District Court. We encouraged the parties to jointly contact the District Court's Calendar Clerk for scheduling purposes, and we denied this (continued...)

147

FEB 13 2003

ducted on January 23, 2003, at which time, the Plaintiffs appeared by Russell A. Ingebritson, Robert J. King, Jr., and Philip G. Arnold, Esqs.; and the Defendant appeared by Jon Z. Lee, and Christopher H. Yetka, Esq. For reasons which follow, the Motion to Compel is denied.

II. Discussion

The Plaintiffs ask that the Court compel the Defendant to produce the following information:

1. The Defendant's MTSA Yearly System Reports from 1979 to 1995;

2. Statistics for direct, represented and litigated Noise Induced Hearing Loss ["NIHL"] settlements from 1988 to 1992;

3. Computer software or spreadsheets underlying the hearing loss worksheet; and

4. Documents and information related to the Association of American Railroad's Ad Hoc Committee Meetings.

In addition, the Plaintiffs seek leave to review documents produced in the case of Burlington Northern Railroad Company, a corporation v. Aetna Casualty & Surety Company, et al., No. 92 MR 164 ("the Illinois Action"), which is venued in the Circuit Court for the Twentieth Judicial Circuit of Illinois, in St. Clair County, Illinois.

---

[1](...continued)
Motion, in the absence of a referral from the District Court.

Since the bulk of the Motions are, in the main, reiterations of Motions that have previously been heard, or that we understood to have been amicably resolved, we provide the factual context for the Motions where appropriate. Our analysis commences with the Motion involving the Illinois Action.[2]

A. The Illinois Action. The Defendant instituted what we understand to be a Declaratory Judgment action in the State Court of Illinois, in order to determine whether it had insurance coverage for NIHL claims and settlements. We rejected the Plain-

[2]The Plaintiffs "implore the Court to take discovery by the reigns and make formal rulings on the discovery issues * * *, so that plaintiffs may proceed with briefing on dispositive motions." While this entreaty smacks of good advocacy, the plea bears little credence given the history of this case. In an Order dated September 9, 2002, we observed that, "[i]f déjà vu involves a sense of feeling 'something overly or unpleasantly familiar,' then, what we confront here, is déjà vu squared." Docket No. 109, at p. 2, citing Webster's Ninth New Collegiate Dictionary, Merriam Webster, Inc., Springfield, Mass. (9th Ed. 1984) at 335. With regularity, one party or the other has recast prior discovery Motions, or objections, so as to obtain a reconsideration, without designating the effort as such. On several occasions, we relegated the parties to a "meet and confer," which they had not conducted as a condition precedent to a discovery Motion, and designated a time at which the Court would resolve any continuing disputes. Notwithstanding the time so reserved, not once did either party invoke our willingness to dispose of discovery disputes on a timely basis. Rather, the parties would allow weeks, or months to expire, before they would draw our attention back to a dispute that they had failed to solve. Of course, by then, the Court was obliged to reinform itself on the substance of the dispute -- a less than efficient employment of judicial resources. Regrettably, the same approach continues. As we stated at the Hearing: "old [wine] [in] a [new] cask." [Tr. at 27].

tiffs' prior requests to pierce the Protective Order, which had been issued by the Trial Court in the Illinois Actions, as an issue best deferred to the Court which extended the protection. Thereafter, the Plaintiffs moved the Court, in the Illinois Action, to intervene in order to file a Motion to lift the Court's Protective Orders. The Motion to Intervene was granted but, by Order dated November 26, 2002, the Illinois Court denied the Plaintiffs' Motion to Lift the Protective Orders. The Court went on to specifically note as follows:

> That no provision of this order is intended to restrict in any way the authority of any other court of competent jurisdiction to make such orders respecting discovery as may be authorized by the jurisdiction of such court.

The Plaintiffs read this proviso as a carte blanche invitation, by the Illinois Court, for this Court to grant the relief from the Protective Orders that the Plaintiffs seek. We are unable to so read the Illinois Court's ruling.

Given its unique perspective, as the Court which crafted the protection for the integrity of its files, we are persuaded that the Illinois Court, having considered the Plaintiffs' overture toward lifting those protections, was unconvinced that the prejudice in doing so would be outweighed by the benefit to the Plaintiffs. We are unable to assume, as the Plaintiffs apparently do, that the Illinois Protective Orders served no purpose in insulating

the confidences of the parties in the Illinois Action. To interject this Court into the propriety of the Illinois Protective Order, would certainly require the conduct of one or more Hearings, in order that those, whose confidences would be disclosed, could be accorded their due process right to demonstrate that the confidences were worthy of protection.

Notably, we are not aware of who, or how numerous, those parties may be, nor do we know the spectrum of materials that are subject to the Protective Orders. The prospect of this Court engaging in the daunting task of reviewing, in camera, some portion, and perhaps all, of the Record in the Illinois Action, is particularly disquieting when the Court, having jurisdiction over those files, rejected the Plaintiffs' request for that same relief. We make clear, however, that, upon a proper showing, the Court would engage in such document reviews, and the conduct of such Hearings, as justice should require, but the mere suspicion, on the Plaintiffs' part, that files in a Declaratory Judgment action may contain some, unknown quantum of relevant evidence, is insufficient cause to reject the determination of the Illinois Trial Court.[3]

[3]We emphasize, in particular, that the Record before us is bereft of any showing, however slight, that the issues in the Illinois Action bear a sufficient unity, with the Plaintiffs' class claims, so as to elevate the Plaintiffs' suspicions into a cognizable showing of relevance.

Therefore, we deny the Plaintiffs' Motion to lift the Protective Orders in the Illinois Action.

B. The Defendant's MTSA Yearly System Reports from 1979 to 1995. MTS and Associates ("MTSA") is a third-party vendor who provided consulting services to the Defendant, concerning a hearing loss conservation program. The Defendant advises that it has already produced some twenty boxes of MTSA documents which, apparently, comprise some 20,000 pages. The Plaintiffs, however, assert that, "[w]ithin the 20,000 documents produced to plaintiffs in July 2002, were several MTSA documents entitled "Yearly System Reports, Proposals and Initial Interval Reports." Plaintiffs' Memorandum, at pp. 4-5. The Defendant relates that the historical documents, inclusive of the MTSA materials, which have been provided to the Plaintiffs, constituted the Defendant's attempt to consolidate such documents into a single collection, and the Defendant has provided the Plaintiffs with a letter, from one of its attorneys, to that effect. See, Exhibit C to Plaintiffs' Memorandum.

More importantly, the Defendant has advised that it is aware of no location where those documents are collected, apart from those documents which have already been produced. Accordingly, the Defendant argues that, "[t]o force [it] to search its entire company files at this stage for the MTS[A] reports that Plaintiffs contend are missing from the 20,000 document collection (some of

which may date back to the 1970s and early 1980s) would impose undue hardship upon [it]." Defendant's Memorandum, at p. 6. We are satisfied that, while the MTSA documents may have particular relevance to the merits of the Plaintiffs' claims, the relevance to the class certification, and dispositive Motions, which the District Court shall hear, is far less clear. We continue to recognize that, inevitably, there will be an overlap in the discovery on the merits, and the discovery on class issues, but we determined, early in the pretrial process, that discovery should be bifurcated so as to allow a determination, "[a]s soon as practicable after the commencement of an action brought as a class action, * * * whether it is to be so maintained." Rule 23(c(1), Federal Rules of Civil Procedure. This has been a difficult ruling for the Plaintiffs to accept and, even though they never chose to appeal that decision, they have contested its propriety by one effort to reconsider after another. Again, we deny the Plaintiffs' expansive effort to conduct merits discovery, which does not encompass the class issues, or is plainly pertinent to any pending dispositive Motions.[4]

---

[4]Counsel for the Plaintiffs argued, at some length, that the proposed discovery was critical to issues involved in the Defendant's Motion for Summary Judgment, or in defense to that Motion. The Plaintiffs suggest that fraudulent concealment, by the Defendant, or Section 55 of the Federal Employers Liability Act ("FELA"), Title 45 U.S.C. §55, among other contentions, warrant a grant of the Motion to compel, and followup depositions on those (continued...)

C. The Statistics for Direct, Represented and Litigated NIHL Settlements from 1988 to 1992. On November 7, 2002, we conducted a Hearing in this matter on certain pending discovery disputes. Once again, we were satisfied that the parties had not exhausted, in any responsible manner, their obligation to "meet and confer" prior to seeking judicial relief. Accordingly, counsel for the parties were directed to confer in a conference room, directly across from the Courtroom, and to report what issues had eluded a resolve, and required a Bench ruling. Later in the day, counsel reported that substantial progress had been made, and that the "meet and confer" should continue while other issues were addressed more fully. Accordingly, we directed counsel to advise the Court, by no later than November 27, 2002, which issues required a Court determination.

In a joint letter dated November 27, 2002, the parties listed the issues which had been resolved, or in which a resolve was "in the pipeline," and identified any discovery issues requiring an

---

[4](...continued)
issues, and on those attendant to other aspects of request for further disclosures. Our assessment of the Section 55 issues is guided by the District Court's earlier analysis in this action, and we are satisfied that, if critical information were needed to combat the Motion for summary disposition, the Plaintiffs would have advanced the same well before this late date. See, Larson v. Burlington Northern & Santa Fe Ry. Co., 2002 WL 47005 (D. Minn., January 10, 2002).

adjudication. See, Exhibit 1 to Affidavit of Christopher H. Yetka. Five discovery issues were listed as unresolved, and "deferred for judicial determination," and not one of them related to the issue of statistics. According to the Defendant, statistical information had been one aspect of the Plaintiffs' Motion to Compel, which was to be heard on November 7, 2002. At the "meet and confer," on that same date, the Defendant agreed to produce a document that, assertedly, was otherwise privileged, and that could "resolve the statistics issue." Defendant's Memorandum, at p. 7. According to the Defendant:

> [A]fter receiving the promised document on November 18, 2002, Plaintiffs no longer requested production of statistical information. Indeed, at no time was the issue raised by Plaintiffs during the numerous telephone conferences that took place in later November to discuss discovery issues.

Id.

The Defendant underscores that the parties' joint letter of November 27, 2002, did not identify statistical documents as a continuing discovery dispute.

For their part, the Plaintiffs deny that any accord was reached on the issue of statistics, and they offer correspondence dated November 8, 13, and 15, 2002, to reflect that, after the November 7 "meet and confer," counsel continued to discuss the matter of statistics. The Plaintiffs' reliance on the referenced

correspondence is misplaced. Both sides concede that the Plaintiffs initially sought certain statistical information, and through at least November 15, 2002, the issue had not been resolved. However, the Defendant's representation, that a statistical document was produced to the Plaintiffs, on November 15, 2002, is not controverted, and the Plaintiffs admit that they took the deposition of Don Wind, on November 15, 2002, who they characterize as "the person identified as knowledgeable with respect to the BNSF claims department computerized data and statistical information." Id. Given the statistical discovery to which the Plaintiffs unquestionably had access, we find it telling that they had not identified statistics as an area requiring further Court intervention.

The "meet and confer" responsibility of litigants would have little real effect if, having agreed to an accommodated scope of discovery, a party was free to disregard that agreement when it should suit that party's purposes. Discovery is, quite frequently, akin to horse trading -- some is given up in exchange for something in return. While we are in no position to determine what "horses" were traded, we are fully positioned to hold the Plaintiffs to the bargain they struck. Had the Plaintiffs advised that they were misled, or deluded, into an agreement that subsequent discovery revealed as prejudicial, a far different issue would be presented.

Here, however, the Plaintiffs make no such showing and, in fact, we are presented with scant evidence that such statistical information would bear relevance on the approaching dispositive, or class certification issues. Accordingly, we deny this aspect of the Plaintiffs' Motion to Compel.

D. The Computer Software or Spreadsheets Underlying the Hearing Loss Worksheet. The Defendant maintains that it has "produced the computer spreadsheets at issue to the extent they were reasonably available." Id. at 10. By being "reasonably available," we understand the Defendant to have reference to our refusal, at a much earlier pretrial stage, to require the Defendant to search years, and years, of personnel, and related files, seeking NIHL settlement worksheets which may, or may not, exist. Again, the Plaintiffs disfavored that ruling, but never sought an appeal, choosing rather, to reargue the issue with regularity. Notwithstanding the Plaintiffs' protestations, we are not presented with any showing that the Defendant is less than forthright in its representation, and we decline to require the Defendant to undertake the expansive search we earlier rejected. Therefore, this aspect of the Plaintiffs' Motion is also denied.

E. Documents and Information Related to the Association of American Railroad's ("AAR's") Ad Hoc Committee Meetings. In 1993, the Defendant, and other national rail carriers, entered a "Joint

Defense Agreement," so as to share information involving, among others, common issues of occupational safety, health, and litigation. Such joint defense agreements are recognized in this, and other Circuits. See, e.g., John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 556 (8th Cir. 1990). The Court, in In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 922 (8th Cir. 1997), cert. denied, 521 U.S. 1105 (1997), relied upon the Restatement §126(1), to explain the "common-interest doctrine," as follows:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged * * * that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

"This doctrine softens the ordinary requirement that the lawyer-client communications must be made in confidence in order to be protected by the privilege." Id. Moreover, "[i]t is fundamental that 'the joint defense privilege cannot be waived without the consent of all parties to the defense." John Morrell & Co. v. Local Union 304A, supra at 556, quoting Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 29 (N.D. Ill. 1980).

We have reviewed, in camera, the referenced Joint Defense Agreement, and we can confirm that it is what it purports to be,

and that it protects, from disclosure to third persons, information which a signatory shares with co-signatories. In addition, at our request, we have reviewed, again in camera, three pages [BN-LARS 009117 through 009119] which were identified by the Defendant, as privileged, based upon the Joint Defense Agreement. These pages pertain to a different railway's settlement of hearing loss claims and, to our reading, bear no relevance to the claims, and defenses, in this case. While the Plaintiffs can surmise that documents, which are encompassed within the protections of the Joint Defense Agreement, are relevant to this case, they have made no showing. Rather, for reasons neither clear, nor explained, the Plaintiffs rely on a section of the Manual for Complex Litigation, 3rd Ed., §23.23 at p. 181 (1995), which relates to "sharing agreements, by which anticipated damages are allocated so as to control the parties ultimate financial exposure." Plaintiffs' Memorandum, at p. 14. Whatever may be said of such "sharing agreements," that is not the circumstance here presented. Therefore, finding no merit to the Plaintiffs' Motion to Compel the production of documents subject to the AAR's Joint Defense Agreement, or of the Agreement itself, we deny the same.

Lastly, we question the Plaintiffs' concerted effort to pursue this Motion to Compel while, contemporaneously, espousing an interest in advancing their Motion to Certify the Class. We certainly

can understand the effort to leave the proverbial "no stone unturned," but several aspects of the Motion, if granted, would require seriously extended, and extremely time consuming efforts, to assure that all concerns, about the proposed discovery, were considered and addressed. If the discovery, which would justify such extreme burdens, warranted that effort, then we would have expected the issues to be addressed much earlier in the pretrial process, with a far more convincing demonstration of need, and not at a time well after the close of discovery on this stage of the proceedings.

NOW, THEREFORE, It is --

ORDERED:

1. The Defendant's Motion for Default or, in the Alternative, to Set a Briefing Schedule for the Defendant's Motions for Summary Judgment, for the Plaintiffs' Motion for Class Certification [Docket No. 134] is DENIED.

2. That the Plaintiffs' Motion to Compel [Docket No. 144] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE